GALVESTON, H. & H. R. CO. v. COPLEY.
(No. 6809.)

(Court of Civil Appeals of Texas. Galveston.
April 14, 1915. Rehearing Denied
May 6, 1915.)

1. RAILROADS ⬦==348—CROSSING ACCIDENT—
NEGLIGENCE—EVIDENCE.

A finding that a train approaching a crossing did not sound the whistle or ring the bell is sufficiently supported by evidence of plaintiff, suing for the destruction of his automobile struck by the train, and two witnesses, that they did not hear the whistle or bell, though opposed by evidence of the engineer, fireman, and switching foreman that the bell was rung continuously while the train was approaching the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⬦==348.]

2. RAILROADS ⬦==337—OPERATION OF TRAINS — CROSSING ACCIDENT — NEGLIGENCE — PROXIMATE CAUSE.

Where trainmen approaching a crossing did not sound the whistle or ring the bell, and their failure so to do was negligence, and plaintiff was not guilty of any negligence in attempting to cross the track, the negligent failure of the trainmen to give the warnings was the proximate cause of the collision with plaintiff's automobile.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1090–1095; Dec. Dig. ⬦==337.]

3. NEGLIGENCE ⬦==62—PROXIMATE CAUSE.

Where, subsequent to an original wrongful or negligent act, a new cause intervenes, of itself sufficient to stand as the cause of the accident complained of, the former act is too remote.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76–79; Dec. Dig. ⬦==62.]

4. RAILROADS ⬦==337—COLLISIONS AT CROSSINGS—PROXIMATE CAUSE.

A driver of an automobile entered on a railroad crossing without seeing or hearing a train, which was approaching without signals. He was not negligent in entering on the track, but the automobile became stalled and was struck by the train. The accident would not have happened if signals of the train's approach had been given, or if the automobile had not stopped. Held, that the negligent failure of the trainmen to give the required warnings of the train's approach was the direct or proximate cause of the collision.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1090–1095; Dec. Dig. ⬦==337.]

5. APPEAL AND ERROR ⬦==1013 — REVIEW — MEASURE OF DAMAGES—AMOUNT OF RECOVERY.

Where there was evidence that an automobile, struck by a train at a crossing, was of the value found by the court, the judgment would not be disturbed as excessive on the ground that the court adopted an improper measure of damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3993–3995; Dec. Dig. ⬦== 1013.]

6. APPEAL AND ERROR ⬦==1013—FINDINGS ON CONFLICTING EVIDENCE — CONCLUSIVENESS.

A conflict in the evidence of value of personalty negligently destroyed is conclusively settled by the findings of the trial court awarding damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3993–3995; Dec. Dig. ⬦== 1013.]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by George N. Copley against the Galveston, Houston & Henderson Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and John T. Garrison, all of Houston, and John L. Darrouzet, of Galveston, for appellant. Jams B. & Charles J. Stubbs, of Galveston, for appellee.

McMEANS, J. George N. Copley brought this suit against the Galveston, Houston & Henderson Railroad Company to recover the value of an automobile which belonged to him, and which was practically destroyed by being struck by a car of a train operated by the defendant.

Recovery was predicated upon the alleged negligence of defendant in the operation of its cars in the following particulars: In running its cars in the city of Galveston at a rate of speed prohibited by the ordinances of said city; in failing to blow the whistle and ring the bell, as required by said ordinances; in the failure of the flagman at the street crossing, where the accident happened, to warn plaintiff of the approach of the cars; in not properly having the cars equipped with air brakes; and in failing to exercise ordinary care to discover appellee's peril and to avoid collision with his automobile after such peril was discovered.

Defendant answered by general denial and by special plea of plaintiff's contributory negligence. It further pleaded that, if defendant was negligent in any of the particulars alleged, such negligence was not the proximate cause of the collision for the reason that, at the time plaintiff attempted to cross the track in his automobile, the approaching cars were more than 200 feet from the crossing, and that, when the automobile got upon the track, it, from some unknown cause, stopped suddenly, and that plaintiff was unable to start the same before it was struck by the approaching cars; that, had said automobile not stopped, the plaintiff had ample time to cross and would have crossed the track before the cars reached the crossing; and that the stopping of the automobile on the track was an independent intervening cause and the proximate cause of the accident.

The case was tried before the court without a jury and resulted in a judgment in favor of the plaintiff for the alleged value of the machine, less the sum for which it sold after the collision, and for 6 per cent. per annum interest thereon from the date of the collision, aggregating $2,379, from which the defendant has appealed.

The court upon proper request reduced to writing and filed its findings of fact, and we adopt the following portions thereof,

which are justified by the evidence, as our fact findings:

"I find that on or about October 27, 1910, plaintiff was going south on Thirty-Seventh street in an automobile; that there was a fence about eight feet high on the west side of Thirty-Seventh street, extending from Avenue C, or Mechanic street, southward to Market street, or Avenue D, which last street is crossed and traversed by several tracks of defendant; that Market street and Mechanic street run practically east and west and parallel to one another; that Thirty-Seventh street is a much traveled thoroughfare, and is one of the main thoroughfares for reaching the docks along the wharf front in the city of Galveston; that, at the time aforesaid, plaintiff, upon reaching Market street in the said automobile, after passing the fence aforesaid, and before reaching said street, looked to the east and west for any car or train of cars that might be approaching; that said fence obstructed the view of plaintiff, and that, while passing along said Thirty-Seventh street parallel with said fence, he saw no such car or cars, nor did he see any after passing such fence, and plaintiff crossed with his automobile a track of defendant towards the north side of Market street and was in the act of crossing a second track of defendant, at or near the middle of Market and Thirty-Seventh streets, when plaintiff, for the first time, saw a long train of cars coming towards him, with a box car at the end nearest him, and which was then about 200 feet away; that said train consisted of about 38 box cars, with an engine at the west end of said train, or the end furthest away from the plaintiff; that said engine and train of cars were owned and controlled and operated by defendant and its employés; that one of the employés of defendant was on top of and at or near the east end of the car nearest to plaintiff, and said train was then backing around a curve from the westward and moving at a rate of speed of at least 10 miles an hour; that plaintiff was crossing said streets and tracks slowly and cautiously, and as he saw the train coming around the curve, just as he was in the act of crossing, with his automobile, the track at or near the center of the street, he endeavored to promptly increase the speed of the automobile in which he was, but that such automobile suddenly stopped, the engine thereof failing to work; that it had previously been in good working and running order; that, upon the stoppage of said automobile, plaintiff jumped out of the same, and as the train of cars was coming too rapidly to afford plaintiff time to start the machinery of his automobile, or attempt to do so, and thus leave the track, plaintiff ineffectually attempted to push said automobile off the track, but was unable to do so before the train came upon it, striking said automobile with much speed and violence, and pushing it along the track a distance of between 175 and 200 feet before the train came to a stop, thereby damaging and practically destroying plaintiff's automobile; that the reasonable market value of said automobile immediately before said collision was $2,075, and that its reasonable market value immediately after said collision was $100; the actual damage sustained to said automobile was $1,975, and that the interest upon said $1,975 from October 27, 1910, up to the date of the judgment herein, March 30, 1914, was $404.-87, making a total of $2,379.87.

"I further find that at the time of said collision, on or about October 27, 1910, there was an ordinance of the city of Galveston in force, being article 453 of the revised ordinances of the city of Galveston, and reading as follows: 'Art. 453. It shall be the duty of every engineer or other person in charge of a locomotive or engine to cause the engine bell to be rung continuously, and the whistle to be sounded at every street crossing, whilst the engine or cars are in motion within the corporate limits, and any person who shall violate any of the provisions of this article shall be deemed guilty of an offense, and shall be fined by the recorder in any sum not less than five dollars, nor more than one hundred dollars.'

"I further find that the bell on the locomotive pushing said train of cars was not rung, nor the whistle blown or sounded, as required by said ordinance, and that had said bell been rung and whistle blown, as required by said ordinance, plaintiff would have heard the same and been warned in time to have avoided the collision, and would not have crossed said track until the said train had gotten by; and I further find that the failure of said defendant, and its engineer, or the person in charge of its locomotive, to cause the engine bell to be rung continuously and the whistle to be sounded at every street crossing whilst the engine or cars were in motion in the corporate limits of the city of Galveston, was negligence, as a matter of law, and independently on the part of the defendant.

"I further find that the perilous position of the plaintiff's automobile was discovered promptly by the defendant, but not in time, after defendant realized such peril, to avoid the collision by the use of the means at defendant's command.

"I further find that defendant's servant Smith, who was foreman of the crew of said train, and who was stationed on or about the east end of the box car nearest the automobile, first gave the signal to stop the train just as he saw the automobile stop, and that said stop signal was the ordinary stop or slow signal.

"I further find that said ordinary stop signal was communicated promptly by the other trainmen to the engineer, and that the engineer proceeded to reduce the speed of the train by shutting off the throttle and applying air to the engine; that the cars on the train were equipped with air brakes, but that such air brakes were not coupled up so as to be of use; and that owing to the fact that it is impracticable to switch cars with the air brakes coupled up, and as the said train was switching cars, said air brakes were not used, except on the locomotive.

"I further find that a long train of cars, such as this train was then moving, has considerable slack in it, approximately 12 inches to the car, which must be first taken up before the train can be suddenly stopped, or else there would be danger of pulling out the couplings of the cars.

"I further find that as soon as the defendant's foreman, Smith, saw the plaintiff get out of his automobile, after said automobile had stopped on the track, said foreman gave a violent signal to stop, or what is known as a washout signal, meaning an emergency stop; that said washout signal was promptly communicated by the other trainmen to the engineer of the locomotive attached to said train, who further set the air on the train and reversed the engine.

"I further find that the time between the slow signal given by defendant's foreman and the washout signal was about five seconds.

"I find that the length of a box car is from 36 to 40 feet.

"I further find that a train, such as this one, running at a speed of 5 or 5½ miles an hour, would require about 250 feet within which to stop, after the application of the emergency stop.

"I further find that defendant's foreman, Smith, saw the automobile of the plaintiff coming a half block before it got to the crossing at Thirty-Seventh and Market streets.

"I further find in this connection that the plaintiff Copley was approaching said tracks at a speed of about seven miles an hour, and that he was going slower across the tracks than he was approaching them.

"I further find that, if plaintiff's automobile

had not stopped on the track, he could have passed over all right before said collision occurred, and said automobile would not have been struck by the train."

We shall not discuss appellant's assignments of error in the order presented in its brief, but shall dispose of the ninth, which complains of the court's findings of fact to the effect that the bell of the locomotive was not rung or the whistle blown while the cars were approaching the crossing in question.

[1] The evidence was conflicting in this regard: The engineer, fireman, and the switching foreman, who was on the car that came in contact with the automobile, all testifying that the bell was rung continuously while the cars were approaching the crossing, and that the whistle was sounded several times just before the train was put in motion, while, on the other hand, the plaintiff testified that, as he approached the crossing, he was "listening for any signs of trains approaching, bells or whistles. I was using every possible precaution. Before I reached there and as I approached the north track, I was listening for the bell, and before I reached the north track I was listening for the whistle. I remember distinctly doing that. I didn't hear the whistle, and I didn't hear the bell." Again he says that as to whether or not the whistle was blowing or blew for the crossing, or the bell was kept continuously ringing for the crossing, he did not hear it; that if it had blown he would have heard it, and that that applied also to the bell.

The witness Wm. W. Setley, who, just before the collision, was approaching the crossing on a bicycle, and witnessed the accident, testified emphatically, "No signal with bell or whistle was given before the collision." Annie Herron, who crossed the track in a gig immediately before the collision, testified that no whistle was blown or bell rung that she heard.

In view of the foregoing facts, we cannot say that the court was not warranted by the evidence in making the finding complained of, and the assignment of error is overruled.

[2] We shall not consider in detail the other assignments of error which go to the merits of the case. As has before been shown, the accident happened in the city of Galveston; and an ordinance of said city, then in force, made it the duty of every engineer or other person in charge of a locomotive or engine to cause the engine bell to be rung continuously, and the whistle to be sounded at every street crossing, while the engine and cars are in motion. The court found as a fact, upon sufficient testimony to warrant the finding, that the bell on the locomotive was not rung nor the whistle blown or sounded, as required by said ordinance, and that had said bell been rung and whistle blown, as required by the ordinance, plaintiff would have heard same and been warned in time to have avoided the collision, and would not have crossed said track until said train had gotten by, and that the failure to ring the bell continuously and to sound the whistle at every street crossing while the cars were in motion was negligence on the part of defendant, as a matter of law, and independently. The court, in its seventeenth finding of fact, which has not been hereinbefore copied, found, upon testimony which justified it, as follows:

"I further find that as the plaintiff, Copley, approached the north track on Thirty-Seventh and Market streets, and before he reached there, he was listening for the bell of the locomotive and also listening for the whistle; that he did not hear the whistle and did not hear the bell; that had the whistle been blown, or the bell rung, he would have heard the same; that, if he had heard either the bell or the whistle, he would not have crossed or attempted to cross the track; that the plaintiff, Copley, relied upon the blowing of said whistle and the ringing of the bell, and each of them, and in part depended upon the same for warning; that he was also relying upon what he could see, and was relying on the flagman to give him warning, and was also relying on whether he could hear anything else beside the whistle or bell that would lead him to think that a train was approaching; that, if said whistle had been blown or bell rung, it would have made the plaintiff stop before attempting to cross said tracks at Thirty-Seventh and Market streets and find out definitely if any train was coming or not, and because of the failure of the defendant, or its servants, to sound the whistle or ring the bell, or to do either, * * * plaintiff attempted to go across said crossing, which he otherwise would not have done until such train had passed east and beyond said crossing."

Appellant does not by any assignment of error attack or question the court's finding that, if the whistle had been blown or the bell rung, it would have made plaintiff stop before attempting to cross the tracks and find out definitely whether a train was coming, and because of the failure to sound the whistle or ring the bell, or do either, plaintiff attempted to cross the track, which he otherwise would not have done until such train had passed; nor does the appellant assert that the plaintiff, in attempting to cross the track in the circumstances detailed, failed to exercise that degree of care required of him by law to discover the approach of the cars, or that he was otherwise guilty of such contributory negligence as would bar a recovery.

The court concluded, as a matter of law, that the negligence of defendant in failing to sound the whistle or ring the bell was the proximate cause of the plaintiff's damage. The court having found upon sufficient proof that no warning of the movement of the train was given by either the bell or whistle, and that the failure to give such warning was negligence which was the proximate cause of the collision, and there being no proof, and no contention on the part of the defendant, that plaintiff was guilty of negligence in attempting to cross the track at the time and under the circumstances he did, we think the court correctly held that the negligence of the defendant in failing to

give the warnings was the proximate cause of the collision and the damage sustained by plaintiff, and that therefore the court properly rendered judgment in his favor.

But appellant contends that, even if defendant was negligent in failing to give the signals by bell or whistle, such negligence was not the proximate cause of the collision, but that the proximate cause was an independent cause, namely, the stopping of plaintiff's automobile upon the track, at a time when he was passing over it ahead of the advancing train.

[3] It is the generally recognized doctrine that if, subsequent to the original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote. Seale v. Railway, 65 Tex. 278, 57 Am. Rep. 602.

[4] The court found and the evidence shows that, at the time plaintiff's automobile stopped on the track, the approaching cars were about 200 feet distant, and that, if the automobile had not stopped, the plaintiff could have gotten safely across before the cars reached the crossing. But the evidence further shows that plaintiff was not negligent in attempting to cross the track; that he did not see the approaching cars until he was on the track, and that he was not negligent in not seeing them sooner; that, if the signals required by the ordinance had been given, he would have stopped before reaching the track and ascertained definitely whether a train was approaching, and that, because the signals were not given, he attempted to cross, and that he would not otherwise have done so until the train had passed. If plaintiff had actually seen the approaching cars, and, believing that he had ample time to cross, had attempted to do so, or, knowing of the approach of the cars, had hazarded the chance of getting over before being struck by them, then the failure of the defendant to give the signals, while negligence because in disregard of the requirements of the ordinance, would not have been the proximate cause of the collision, for in that case he would have had all the notice of the approach of the train that the warning signals could have given him, and, in such case, the stopping of the automobile on the track would have been an intervening cause sufficient to break the causal connection between the negligence of defendant in failing to give the required warnings and the injury complained of; and plaintiff would not have been entitled to recover. But that is not the case before us. Here defendant was remiss in its duty to give the required signals, and by reason thereof plaintiff went upon the track, and he would not have done so but for the negligence of defendant in failing to give the required warnings. But for defendant's negligence, then, plaintiff would not have gone on the track, and, of course, his automobile, but for such negligence, would not have stopped on the track. We think, therefore, that defendant's negligence must be regarded as the direct or proximate cause of the collision and the consequent damage sustained by plaintiff. This view is emphasized, we think, by the testimony of appellant's foreman of the engine crew, where he, speaking of the crossing and automobiles passing over it, says, "I have seen thousands of them go by there and do the same thing, stop on the track;" and again, "I have seen lots of automobiles go over there and stop there too."

[5, 6] The seventh assignment complains that the judgment is excessive. Under this assignment, appellant urges the proposition that, plaintiff having sought to recover damages for destruction of an automobile that had been used, the proper measure of damages was the value of the car at the time of the destruction, and not its value when originally purchased; the undisputed facts showing that the car at the time of its destruction was a secondhand car.

Appellee concedes that the proper measure of damages was the value of the car at the time it was destroyed, and what it originally cost does not necessarily determine that value. There was no proof that secondhand cars had a market value in Galveston or elsewhere. There was proof, however, that plaintiff's automobile was of the value found by the court in its judgment; and, if there was any proof to the contrary, the appellant has not pointed it out in its brief. And, even if there was a conflict in the evidence as to such value, the judgment of the court has settled the conflict, in so far as this court is concerned.

We have examined all of appellant's assignments of error, and are of the opinion that no reversible error is pointed out in any of them. The judgment of the court below is affirmed.

Affirmed.