## TEXAS & P. RY. CO. v. GUIDRY.
### (No. 3566.)

Court of Civil Appeals of Texas. Texarkana. July 12, 1928.

Rehearing Denied Aug. 2, 1928.

Bibb & Caven, of Marshall, for appellant.

Jones & Jones, of Marshall, and P. G. Henderson, of Jefferson, for appellee.

WILLSON, C. J. (after stating the facts as above).  It appearing the deceased would not have been injured if the car on which he was riding had not left the track it was on, and it appearing the car would not have left the track, but for the presence of the cow thereon, appellant insists the presence of the cow on the track and consequent derailment of the car was the proximate cause of the injury to the deceased, and therefore that the court below erred when he refused its request that he instruct the jury to return a verdict in its favor. The contention seems to have support in statements of the court in Union Pacific Ry. Co. v. Callaghan (C. C. A.) 56 F. 988, cited by appellant, but it is opposed by authorities which we think better state the law applicable to the facts of this case. "No exact rule for determining when causes are proximate and when remote has yet been formulated" (22 R. C. L. 119), and when such a rule is formulated, said the United States Supreme Court in Insurance Co. v. Tweed, 7 Wall. 52, 19 L. Ed. 65, it will "remain, after all, to decide each case largely upon the special facts belonging to it."

Perhaps the most quoted definition of the phrase is the one following:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." 22 R. C. L. 110.

Another approved definition is as follows:

"The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted, notwithstanding the latter." Railway Co. v. Kelly, 91 Tenn. 699, 20 S. W. 312, 17 L. R. A. 691, 36 Am. St. Rep. 902; Fairbanks v. Gambill, 142 Tenn. 633, 222 S. W. 5.

When tested by either of the definitions just set out, we think it must be said that the negligence of the engineer (as found by the

jury) in failing to stop the train before the gondola car collided with the car on the other track was a proximate cause of Guidry's death; for it is plain, if the engineer had stopped the train before the collision between the cars occurred, Guidry would not have been injured as he was. It may be that the presence of the cow on the track was also a proximate cause, for there may be more than one such cause of an accident (Railway Co. v. Wilkes [Tex. Civ. App.] 159 S. W. 126; Sweet v. Perkins, 196 N. Y. 482, 90 N. E. 50); but we are of the opinion it was a remote cause, within the rule stated in Railway Co. v. Copley (Tex. Civ. App.) 176 S. W. 665, that where, subsequent to the original act, "a new cause [quoting] has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote." It cannot be doubted that the engineer owed Guidry the duty to exercise care to stop the train after the gondola car became derailed, whatever the cause of the derailment; and it cannot be doubted that the failure to stop the train was an efficient cause of the accident.

It follows, from what has been said, that we think the first, second, seventh, eighth, twelfth, and twenty-fifth assignments of error set out in appellant's brief should be overruled.

■ It is insisted it conclusively appeared from the evidence that Guidry was guilty of negligence, in that he failed to discharge his duty to keep a lookout for the cow and signal the engineer when he saw her on the track, and that the trial court therefore erred when he refused appellant's request that he instruct the jury to return a verdict in its favor on that ground. We do not think it so appeared, but, if we did, would not think the court erred as claimed, in view of the issue of discovered peril made by the pleadings and evidence. And, in view of the finding of the jury on the issue just mentioned, if it was error to refuse appellant's request to submit to the jury an issue as to whether Guidry, in the exercise of ordinary care, "could have seen [quoting] the cow on the track, or coming on the track, and signaled the engineer, and an issue as to whether, if he could have seen her, his failure "to see the cow [quoting] and signal the engineer was the sole proximate cause" of his death, we think the error should be treated as harmless. Therefore the third, thirteenth, fourteenth, twenty-second, and twenty-fourth assignments of error are overruled.

■ In the submission of the special issues it was proper for the court, in connection therewith, to submit only "such explanations and definitions of legal terms as shall be necessary [quoting] to enable the jury to properly pass upon and render a verdict on such issues." Article 2189, R. S. 1925. The special charges Nos. 7, 9, 13, 14, and 15, set out in assignments of error Nos. 5, 6, 9, 10, and 11, did not supply explanations of definitions of that character, and therefore we think said assignments were properly overruled.

■ After the jury had retired to consider what their verdict should be, they returned into open court and in writing stated they "would like [quoting] the testimony of the fireman [one Rivault] as to the distance the body of Mr. Guidry was from the point of derailment." Complaint is made here because the court, in response to the request, refused to have all the testimony of the fireman read to the jury, but had only a part thereof, as follows, read to them:

"Q. How far did you run before you stopped? A. About three car lengths. Q. When it got stopped, and you went back down there, where did you find Guidry's body? A. About two cars back of the engine. Q. Well, you had two cars back of the engine, didn't you? A. Yes, sir. Q. Was the body back of the car, or right even with it? A. It was right about even with the rear end of it. Q. About how far was it from where the car first got off the track to where he was? A. About two or three cars. Q. His body was about two or three cars north of where the car got off the track? A. Yes, sir."

It appears that in the course of his examination as a witness the fireman testified further with reference to the distance of Guidry's body from the point of derailment as follows:

"Q. About how far did the train run before it stopped? A. About two or three car lengths. * * * Q. What did you see that caused the derailment? A. We hit a cow. Q. When the car derailed, did it make any marks on the ties as it went off? A. I didn't notice that. Q. Did you notice how the cow was lying when you got off? A. Yes, sir. Q. About how far was it from where the cow was lying to where Mr. Guidry was? A. The cow was under the tank and he was about two cars back of the engine."

If appellant thought it important that the part of the testimony of the witness last quoted should be read to the jury, when the part first quoted was read to them, it should have pointed it out, and have requested the court to have it read, instead of requesting him to have all of the testimony of the witness read. It clearly was not error not to comply with the request as made, and we think appellant has no right to complain here of the action of the court in the matter.

■ Finally, it is insisted the verdict and judgment are excessive. It appeared that Guidry was 32 years of age at the time of the accident, had a life expectancy of 33.92 years, was earning $200 per month, and that he left his wife, appellee here, and two children, the oldest 9 years of age, surviving him. There is nothing in the record indicating the jury were influenced by any improper consideration in determining the amount of their verdict, and the contention is overruled.

The judgment is affirmed.