## CITY OF WACO v. CRISWELL.

### No. 2431.

Court of Civil Appeals of Texas. Waco.

Jan. 7, 1943.

Rehearing Denied Feb. 4, 1943.

Geo. W. Morrow, City Atty., Mabel Grey Howell, Asst. City Atty., and Darden & Burleson, all of Waco, for appellant.

Fitzpatrick & Dunnam, of Waco, for appellee.

TIREY, Justice.

This is a damage suit and is the second appeal. See City of Waco v. Criswell, Tex. Civ.App., 141 S.W.2d 1046. On the second trial the jury answered all of the issues favorable to the plaintiff and against the City and acquitted the plaintiff of all negligence; and on the verdict of the jury the court awarded judgment in favor of the plaintiff against the City for the sum of $3075.00, with legal interest. Defendant seasonably presented its motion for peremptory instruction and its motion for judgment non obstante veredicto, both of which were overruled; hence this appeal.

Points 1 and 2 are substantially to the effect that (1) there was no evidence that the City was guilty of negligence in the maintenance of the entrance to the storm sewer out in the traveled portion of the street, nor in its failure to have an iron grating over the entrance to the storm sewer so as to permit automobiles to drive over the same; and (2) there was no evidence that either of said conditions aforesaid was a proximate cause of the injuries sustained by plaintiff.

On the issues pertinent to these points the jury found substantially (1) that Lloyd Barton drove appellee's car into the storm sewer in question; (2) that just prior to the time Barton drove the said car into the storm sewer he was meeting an oncoming car; (3) that Barton drove into the storm sewer in order to prevent a collision with the oncoming car; (4) that the City maintained the entrance to the storm sewer out into the traveled portion of the street and that such maintenance rendered the street in a condition that was not reasonably safe for the use of the public traveling in automobiles; (5) that such maintenance was negligence on the part of the City and that such negligence was the proximate cause of the injuries sustained by appellee; (6) that the City failed to have over the entrance to the storm sewer an iron grating, so as to permit automobiles to drive over same without injury to the occupants thereof, and that such failure rendered the street in a condition that was not reasonably safe for the use of the street by the public traveling in automobiles, and that such negligence was the proximate cause of the injury; and (7) that plaintiff's injuries were not the result of an unavoidable accident.

The location of the storm sewer and the street at the point of the accident are fully described in the former opinion, and there is no substantial change in the evidence as to the dimensions and location of the storm sewer and the general description of the street. It is undisputed that the street was squeegeed and was about 44 feet from curb to curb; that the distance between the storm sewer on the east and the west side of the street was about 35 feet; that the bridge on Waco Creek was 37½ feet wide and the north end thereof was 54 feet south of the storm sewer on the west side; and that the accident happened in this manner: Appellee and Lloyd Barton came from Marlin to Waco on a joint business trip on the day the accident happened. Just after dark they started home and Barton was driving appellee's car (appellee could not drive a car) in a southerly direction on South 3rd Street, which was the street customarily used by them in coming to and leaving Waco. As they approached the place of the accident, driving on their side of the street and near the center of same,

they observed a car approaching them, going in a northerly direction, and just before they passed the first car a second car, running fast and moving in a northerly direction, in an attempt to pass the first car approaching them, suddenly whipped over on their side of the street, which caused the driver of the Criswell car to pull suddenly to his right in order to avoid a collision; that in doing so the Criswell car struck the storm sewer with its right front wheel; that the wheels became jammed and locked and caused the driver to lose control of the car, which car, after striking the storm sewer, ran a distance of 54 feet, at which point it collided with the bridge on Waco Creek and came to a stop, at which point Criswell was thrown to the ground.

■ Are the facts and circumstances in evidence sufficient to support the findings of the jury that the City was guilty of negligence (1) in the maintenance of the storm sewer out in the traveled portion of the street, and (2) in not maintaining an iron grating over the mouth of the storm sewer? We think so. One of plaintiff's counsel testified, in part, "I have examined the storm sewer * * * and the opening, according to my measurements, extended from the curb on the west side of the street out into the street a distance of 42 inches." The other testimony offered pertinent to these points consisted wholly of the evidence of the City Engineer and certain exhibits. The City Engineer testified, in part, substantially as follows: That along the curb line on the west is a concrete gutter three feet wide, which comes to the inside wall of the catch basin; at a distance of about 54 feet north of the catch basin the center of South 3rd Street is 1½ feet higher than the gutter; at a point about six feet north of the catch basin the gutter is 2.2 feet lower than the middle of the street; at the mouth of the catch basin the center of the street is 2.8 feet higher than the gutter; that there is a grate over the top of the catch basin approximately four feet wide; the width of its opening (or inlet uncovered) is about 3½ feet; there is a pipe leading from the inside of the catch basin into Waco Creek 15 inches in diameter, which is the beginning of the storm sewer which drains the water from the catch basin into Waco Creek; there is no storm sewer north from the catch basin draining South 3rd Street, and this catch basin drains all of the water that falls from the center line of South 3rd Street up to Clay Street north, a distance of 5 or 6 blocks, over to the East property line of Fourth Street; the catch basin in question has been constructed 25 or 30 years ago; that that was the type of catch basin that was generally used by cities at the time it was constructed. "Q. What are the facts with reference to whether from the amount of water that goes down Third Street, beginning with Clay, and between 3rd and 4th, what are the facts with reference to whether or not that is the proper type or the only type of catch basin that would effectively and efficiently carry all of the water without danger of flooding? A. I think it is the best type for the amount of water you have to handle." That he was familiar with the construction of the catch basins of various types and that if the catch basins were not constructed in a manner to take all of the water that came down, the water would back up in the street and fill the street and then overflow; that he had served as Assistant City Engineer for seven years and as City Engineer for about twelve years; that his experience showed that grates across mouths of catch basins are not practical or feasible because they are easily stopped up by leaves and trash that are thrown in the street and washed down with the water, and that from his knowledge of the drainage problem involved, a grate across the mouth of the catch basin would interfere with its operation, and that the clogging up of the catch basin would defeat the purpose of its construction, which was to collect storm water and take it underground to the creek; that if the catch basin was stopped up, the water would overflow private property adjacent to the street, and that this would be a menace to the health in that particular area; that the model of catch basin construction has changed many times; that there are different types of catch basins for different types of drainage; "where you have a street served with street sewers laid underground, you can have a different type of catch basin to the one in question to collect the water in the block and take it into the storm sewer"; that there was no underground storm sewer from the catch basin in question north to Clay Street, a distance of five or six blocks; that the type of catch basin depends upon the grade of the street, the topography of the area to be drained, and whether a storm sewer is laid underground; "there is always a part of the

street next to the curb considered as a gutter depending on the amount of water that the street carries as to the type of construction of the gutter; the more water you have, the more face or curb you show, and the more permanent the type of gutter that we construct * * * Q. Now Mr. Strange, will you tell the jury whether steel or iron gratings are made to place over the entrance to storm sewers so that automobiles can pass over them? A. They can be placed over it, yes, sir. Q. And they are manufactured and are used by the City of Waco, aren't they? A. Maybe in some instances, yes, sir. Q. They have been in use in the City of Waco for twenty years, haven't they? A. Some places they have been used; just how long, I don't know * * * Q. They have been in common use in the City of Waco during all the time you have served as City Engineer, haven't they? A. * * * We are abandoning grates of all types, depending, of course, on the locality and the amount of water that is carried." That he didn't know how many entrances to storm sewers or outlets for flood waters were covered with steel or iron grates in the City, but that there were quite a few; that their use depended on the type of drainage to be handled; that South 3rd Street was a heavily traveled street.

"Q. Mr. Strange, I hand you another instrument marked Exhibit No. 11. I will ask you to look at the street shown in there and tell the jury whether that is a catch basin immediately north of Waco Creek on South 8th Street, and on the west side of that street, in the same position that the one is on South 3rd Street, which is involved in this suit? A. I think it is, yes, sir.

"Q. Yes, sir, and that has a grate over it, and automobiles can pass over it, can't they? A. Yes, sir.

"Q. And it was designed for that purpose, wasn't it? A. It wasn't designed especially for automobiles to travel over it. It was designed to try to take the water from off the street.

"Q. Yes, and you designed that and put it in yourself, didn't you? A. I think this catch basin was already built from an old type when we paved South 8th Street along in 1923 or '24.

"Q. And you put it in, didn't you? It was put in under your direction, wasn't it? A. Yes, sir.

"Q. And that was the old type in use at that time, wasn't it? A. It was similar to this; this has changed some from this, from what it was when it was first put in.

"Q. Did that one, within your knowledge, ever stop up with leaves and paper? A. Not that I especially recall, no, sir. * * *

"Q. And you know, as a matter of fact, that leaves and paper couldn't stop that fifteen inch flow there, don't you? A. They are not going to stop that, leaves and paper, no, sir.

"Q. * * * Or if it had a grate over it, it couldn't do that, could it? A. Yes, sir.

"Q. And you can't tell the jury that the one on South 8th Street was ever stopped. * * * A. Some of those pictures you showed me could be stopped very easily * * *."

Exhibits 6 and 7 are pictures of the catch basin, covered by an iron grating, situated on South 8th Street, contiguous to Waco Creek. It is true that the evidence shows that there is an underground storm sewer at this particular area. Exhibits 13 and 15 show openings to catch basins placed in part under the curbing, with part of the openings in the gutter of the street, and these exhibits, in each instance, show that the bottom line of the mouth of the catch basin is flush with the bottom of the gutter, and the part of the opening extending into the gutter is covered by grating. The evidence does not disclose where these catch basins are located. The City Engineer said substantially that the one shown in Exhibit No. 13 had been in common use by the City, but that he did not know how many had been installed; and that the one shown in Exhibit No. 15 was not now in common use, but that it was still in use, but that the City was replacing that type. Exhibit No. 14 is a picture of a catch basin, the mouth of which is rectangular in shape, with the top side flush with the top of the curbing and the bottom side flush with the street, the entire opening being under the parkway. This catch basin was not identified as to location, but the City Engineer said substantially that it was very similar to the type in common use for certain drainage conditions, and with reference thereto he testified in part:

"Q. * * * The City of Waco could have turned this water under the sidewalk in the same manner as shown in Exhibit

No. 14 and emptied the water in Waco Creek without getting off the City of Waco's own property, couldn't it? A. Same type?

"Q. Yes. A. The same size as that?

"Q. * * * the size necessary to carry fifteen inches of water. A. Yes, sir, it could be done."

With reference to the size of such opening the witness further testified: "Well, it would have to be somewhat—I don't know, 15, 20 or 25 or 30 feet long."

After a careful consideration of the testimony on the above matter, we cannot say as a matter of law that there was no evidence to sustain the jury's findings on the above points. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017, points 1, 2.

■■ Regardless of the plan adopted by the City for drainage purposes, we think the duty still rested upon the City to maintain its public streets in a reasonably safe condition for ordinary use. The duty resting upon the City to exercise ordinary care to construct and maintain its traveled or improved portion of the streets so as to render them reasonably safe for ordinary travel has been extended to cover "one injured by a defect or obstruction outside of the street or traveled or improved portion thereof * * * if such defect or obstruction by reason of its proximity to the street, or traveled or improved portion thereof, renders it not improbable that such defect will result in injury to those using the street or traveled or improved portion thereof in the ordinary manner and while exercising due care." City of Waco v. Darnell, Tex.Com.App., 35 S.W.2d 134, 135; City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927; see also Kling v. City of Austin, Tex.Civ.App., 62 S.W.2d 689; City of Waco v. Killen, Tex. Civ.App., 59 S.W.2d 940.

■ Was there any evidence to sustain the jury's finding that such negligence, in either event, was the proximate cause of the injuries sustained by appellee? We think so. "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Texas & P. R. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284, 285, writ refused 280 U.S. 538, 50 S.Ct. 16, 74 L.Ed. 599. "* * * a mere showing of negligence will not justify holding the one

guilty thereof liable for damages. The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries. In order for it to be said that an injury proximately resulted from an act of negligence, the evidence must justify the conclusion that such injury was the natural and probable result thereof. In order to justify such a conclusion, the evidence must justify a finding that the party committing the negligent act ought to have foreseen the consequences thereof in the light of the attendant circumstances." Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, points 1-4, p. 849.

It is true that the driver of the Criswell car testified, in part, as follows:

"Q. You could have gotten over to the right and still not hit the catch basin and not been hit by the other car? A. Well, I guess so. If I had seen the hole I might have missed it and the car. * * *

"Q. If it hadn't been for this car getting over on your side of the street, you never would have turned to the right, would you? A. Why, I don't think so. No, sir. * * *

"Q. You wouldn't have run into the catch basin? A. I don't guess I would. No, sir."

■ This testimony shows that the car in which plaintiff was riding was, for safety's sake, pulled suddenly to the right and into the storm sewer because of the negligence of the driver of an oncoming car in driving to his left and on the wrong side of the street and that but for such negligence of the driver of the oncoming car, plaintiff's car would not have been driven into the storm sewer and plaintiff would not have been injured. Such fact situation does not, in our opinion, relieve the City of liability, because we think such a happening, or a similar one, to be an incident of the use of a busy street, independent of the negligence of a third party, that might require the use of all the traveled or improved portion of the street, and that such accident and injury was of such general character as might reasonably have been anticipated. Missouri-K.-T. R. Co. v. McLain, 133 Tex. 484, 126 S.W.2d 474; see also Carey v. Pure Distributing Corp., supra; City of Waco v. Darnell, supra. Our view is that the negligence of the driver of the oncoming car was a concurring act of negligence with that of the City. Both

acts of negligence could have been and probably were proximate causes of plaintiff's injuries, and would have rendered the City and the driver of such car (if he had been a party) jointly and severally liable to plaintiff for his damages. Under the jury's findings the City's act of negligence was a continuing one but for which, in spite of the negligence of the party driving the oncoming car, the accident would not have happened; and that such fact situation and the consequences thereof might reasonably have been foreseen. See Carey v. Pure Distributing Corp., supra; Missouri-K.-T. R. Co. v. McLain, supra; Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110; City of San Antonio v. Porter, 24 Tex.Civ.App. 444, 59 S.W. 922 (writ refused); City Ice Delivery Co. v. Suggs, Tex.Civ.App., 60 S.W.2d 538 (writ refused); San Antonio & A. P. R. Co. v. Behne, Tex.Com.App., 231 S.W. 354; City of Ft. Worth v. Patterson, Tex.Civ.App., 196 S.W. 251.

Appellant's fifth point is substantially that the court erred in admitting various exhibits, which are pictures of catch basins taken from locations other than the catch basin in question, for the reason that it was not shown that conditions in and about the location of the catch basins were substantially the same as the conditions in the location at which the catch basin in question was located, but that the evidence disclosed different conditions, and it was therefore confusing and prejudicial. We overrule this contention. When plaintiff offered the various pictures in evidence, defendant objected because the conditions were not shown to be the same as those which obtained contiguous to the catch basin in question. The City Engineer testified substantially to the effect that steel or iron gratings can be placed over the entrances to storm sewers so that automobiles can pass over them, and that quite a few of such gratings were used by the defendant; that the gratings portrayed in the various pictures were in common use by the City, dependent on the topography, the amount of water to be carried, and whether or not the streets in which the same were situated were serviced by storm sewers. He did not testify that a grating similar to those shown in the pictures could not be used to cover the catch basin on South 3rd Street. He testified that such basin was the most effective type (from the point of view of efficient drainage) that could have been installed. In view of the fact that plaintiff was contending that defendant had violated the duty which it owed him, of so maintaining South 3rd Street as to render it reasonably safe for travel, in that it had failed to cover with a grate the mouth of the catch basin therein situated so that automobiles could pass over it, our opinion is that said exhibits were certainly admissible as a circumstance to contradict or impeach the testimony of the City Engineer as to whether or not it was feasible or practicable to maintain an iron grating over the sewer in question, and that the objections urged to the admissibility of the pictures goes to the weight of the evidence rather than to their admissibility. 17 Tex.Jur., sec. 111, p. 344; sec. 127, p. 372. Moreover, since the City Engineer testified without objection that iron grates were in common use throughout the City to cover catch basins, we think the exhibits are at most cumulative of his testimony in this respect. 17 Tex.Jur., sec. 123, p. 363. After a careful study of the testimony of the City Engineer, we have come to the conclusion that the exhibits were admissible for the reasons herein stated.

We have considered each of the remaining assignments urged and each is hereby overruled.

The judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.