## DOUTY v. DELTA DRILLING CO.

No. 6698.

Court of Civil Appeals of Texas. Texarkana.

Nov. 12, 1953.

Rehearing Denied Jan. 28, 1954.

Combs, Brown & Brock, J. P. Forney, Houston, Johnson & Hathaway, Tyler, for appellant.

Ramey, Calhoun, Brelsford & Hull, Tyler, for appellee.

HALL, Chief Justice.

This is a suit brought by appellant against appellee for damages allegedly sustained by him as a result of a collision between a car

in which he was riding and a truck owned by appellee.

Trial was to a jury on special issues and judgment was rendered for appellee upon the jury's verdict.

By his first five points, appellant asserts that the trial court erred in submitting to the jury special issue No. 23, inquiring whether appellant and the driver of the car in which he was riding were engaged in a joint enterprise. This is a controlling issue in this case and in our opinion must be determined by the facts presented by the record as a whole.

Special Issue No. 23 is: "Does a preponderance of the evidence show that on the occasion in question, Glynn Holder and A. E. Douty were engaged in a joint venture, or joint enterprise?" The jury answered in the affirmative. It is appellant's contention, first, that the evidence does not raise the issue of joint enterprise between Holder, the driver of the car, and Douty, appellant, who was riding with him; and second, that the giving of such charge, together with the definition of a joint enterprise, influenced the jury in answering the issues of contributory negligence against appellant Douty.

The record reflects that appellant Douty and one Glynn Holder worked for the Gulf Oil Corporation at Kilgore, Texas; that they were fishing partners and friends of long standing; that they fished at Cherokee Lake some twenty-five miles from Kilgore and other more distant points. On this occasion Holder and Douty had been on a fishing trip to a Mr. Jenkins' club house on Lake Cherokee, at the invitation of Mr. Jenkins. They fished there part of two days, and on the evening of April 6, 1951, the second day, appellant Douty and Holder in Holder's car, and Jenkins in his car, on their way home stopped at an eating place on the east side of the Longview and Kilgore highway. Jenkins arrived just ahead of them and wanted to eat at the cafe where they had stopped. But Holder, the driver of the car in which appellant was riding, wanted to eat at the cafe just across the highway.

They all agreed to eat at the cafe on the west side of the Longview-Kilgore highway, selected by Holder. The car in which Holder and appellant were riding belonged to Holder and was driven by him. There was no road across the Kilgore highway from one cafe to the other, the road-crossing was some distance away. The approach to the cafes on either side of the highway was blacktop which extended from each cafe to the highway. Holder, the driver of the car, started across the Longview-Kilgore highway from the east to the west cafe. He testified that he looked both ways and saw no cars approaching. He also testified that he was driving about five miles an hour crossing the highway. When he was nearly across the highway at a point where Holder testified that the front half of his car was off the highway, appellee's truck, a pick-up, driven by one of its employees, coming from the north drove into the right side of Holder's car, striking it somewhere near the rear hub, spinning Holder's car almost entirely around and throwing both appellant Douty and Holder out of the car and injuring them. Douty's injury was rather severe, causing a long stay in the hospital at Kilgore.

The testimony by appellant's witnesses is to the effect that appellee's pick-up truck was traveling at a rapid rate of speed, such that after it struck the Holder car it glanced off to its left and struck a Plymouth car some 75 feet down the road toward Kilgore, doing considerable damage to it.

Mr. Douty testifying on cross-examination in his own behalf stated in part:

"Q. Now, did he (Mr. Jenkins) invite you out to his camp on this occasion? A. Mr. Jenkins?

"Q. Yes. A. Well, I was invited, I couldn't say whether Mr. Jenkins or Mr. League invited me, but one of them invited me, I was invited or I wouldn't have went.

"Q. Well, don't you remember who asked you or invited you? A. No, I don't believe it was Mr. Jenkins, as far as I can remember.

"Q. Did you ask Mr. Holder to go with you, or did he ask you to bring Mr. Holder? A. I can't recollect about that.

"Q. Can you recollect whether you approached Mr. Holder about which car you were going in or whether Mr. Holder approached you about which car you were going in? A. Well, I don't know that we discussed which car we were going in. I believe he just offered to take his, that's the way we usually do. * * *

"Q. Now it was the practice of you and Mr. Holder to go fishing together a good deal? A. Yes, sir.

"Q. And when you were on long trips you shared your expenses? A. Yes, sir.

"Q. If you were in your car he shared those expenses with you; if you were in his car you shared the expenses with him? A. Yes, sir.

"Q. That right? A. Yes, sir.

"Q. And did you or not share those expenses with each other on short trips like to Cherokee, some twenty-five or thirty miles? A. No, sir.

"Q. State whether or not on occasions you used your car in going out to Lake Cherokee? A. Yes, sir.

"Q. With Mr. Holder? A. Yes, sir.

"Q. And then it was just a matter of agreement between you as to which car you would use on some particular occasion, is that correct? A. Well, it was just which one was available.

"Q. You would use either one of your cars? A. Yes.

"Q. Just whichever one was available? A. Yes, sir.

"Q. On this occasion your car was not available. A. I don't remember whether it was or not, I probably could have got it, I just don't remember.

"Q. Well, anyway you just decided to go out there in Mr. Holder's car? A. Yes."

Mr. Holder testified on cross-examination:

"Q. How came you to use your car on this trip? A. I used my car once in a while and he used his car once in a while to go fishing.

"Q. You all go fishing lots. A. That's right.

"Q. And you share expenses on all those trips? A. No, sir; not on that trip I didn't.

"Q. I am talking about other trips you have been on? A. Well, on some trips we have.

"Q. Sometimes you go in your own car? A. Yes, sir.

"Q. Sometimes you share the expenses? A. When we go to Cherokee we do not share it.

"Q. But sometimes when you go in Mr. Douty's car he doesn't make any charge for any expenses, is that right? A. I don't pay any; he pays all the expenses, that's right.

"Q. Well, you have been fishing with Mr. Douty on several occasions when you all shared the expenses of the trip, have you not? A. On long trips, yes, sir.

"Q. You are friends of long standing? A. Yes."

Holder testified further: "We just used one car one time and another car the next." Douty testified further that he did not see either the truck coming from Longview to his right or the Plymouth car coming from Kilgore on his left; he was not sure whether he looked. Douty testified further that if he had seen the truck coming from his right he would have cautioned Holder with respect to it; that when Holder drove the car onto the highway he heard him holler, "Bois d'Arc", which, in oil field parlance, means that the way is clear, and that that was the last thing he remembered before being placed in the ambulance.

Mr. Jenkins, host of appellant and Holder on the fishing trip, testified as a witness for appellant as follows:

"Q. There was nothing in the world to prevent Mr. Holder and Mr. Douty from seeing the car approaching there from the north on that highway, was there? A. I wouldn't say that there was, no sir.

"Q. And you saw it did you not? A. Yes, sir.

"Q. You pulled up to the highway near the residence of the airport employees and stopped before you entered on the paved portion of the highway? A. I saw the pick-up before I reached the highway, sir.

"Q. Can you think of any reason whatever, or can you tell this jury why Mr. Holder and Mr. Douty did not see it? A. I would see no reason, no, sir.

"Q. You could see no reason why they could not have seen it? A. No.

"Q. You saw the approaching pick-up truck before you stopped before entering that highway, did you not? A. Yes, sir.

"Q. And when you saw the approaching truck, and you saw that car on the highway, didn't it go on the road? A. Yes, sir.

"Q. And you had an empty feeling and you knew that something was going to happen, didn't you? A. I wouldn't say that.

"Q. Well, you did say it, didn't you? A. I was anxious, because I didn't know whether he was going to make it across before the pick-up reached him and hit him."

The driver of the pick-up truck also testified that the car in which appellant was riding dashed across the highway in front of him at a dangerous rate of speed. And this witness testified further that he was not traveling in his pick-up at a fast rate of speed. The foregoing testimony coming from appellant and his witnesses is practically all of the facts describing their venture on the occasion of appellant's injury.

In West Texas Coaches, Inc. v. Madi, Tex.Civ.App., 15 S.W.2d 170, 177, affirmed by the Supreme Court in 26 S.W. 2d 199, it is said: "To constitute occupants of a conveyance joint adventurers there must be not only joint interest in the object and purposes of the enterprise, but also an equal right, expressed or implied, to direct and control the conduct of each other in the operation of the conveyance." Appellant cites Ener v. Gandy et ux., 138 Tex. 295, 158 S.W.2d 989; Landers v. Overaker, Tex.Civ.App., 141 S.W.2d 451, together with other authorities stating the rule set out last above. We think that the holding in El Paso Electric Co. v. Leeper, Tex.Com. App., 60 S.W.2d 187, is controlling under the facts here. In that case the court held that the parties in the automobile were joint adventurers as a matter of law and reversed and rendered the judgment against them. In the case at bar the facts and circumstances surrounding the acts and conduct of Holder, the driver of the car, and appellant who was riding with him, show that they were intimate friends of long standing, that they were fishing partners or buddies and that they used each other's car on the different occasions in which to go fishing. Fishing was their joint recreation. As stated by one of the witnesses, sometimes they went in one car and sometimes in the other. When they went in appellant's car to Cherokee or some fishing place nearby their home, appellant paid the expenses. On long trips when expenses were greater they would share them. Their arrangment on short fishing trips of using their cars and paying the expenses turn about was tantamount to sharing expenses with one another on each trip. For when the overall picture is looked to, that is what their arrangement amounted to. From their close friendship and from the use of each other's cars, even though one of them was in charge driving it, the one not driving impliedly, at least, had equal control with the other of the operation of the car. Douty stated in his testimony that if he had seen the truck approaching on the occasion of his injury he would have cautioned or warned Holder about it. In our opinion the facts and circumstances surrounding this trip up until the time of appellant's injury raised a question of fact and were sufficient to require the court to submit the issue to the jury of joint enterprise as be-

tween Douty and Holder. There is no question about what the law is with respect to joint adventurers. The negligence of the driver of the car is imputed to the person riding with him. The action of the trial court in submitting special issue No. 23, with respect to joint enterprise or venture, is warranted by the evidence in the case, and is sufficient to sustain the jury's affirmative answer thereto. These points are overruled.

Appellant asserts by his point 6 that the court erred "in refusing to permit appellant's expert witness, W. S. Grandberry, a member of the Texas Highway Patrol, to testify as to his opinion, based on the physical facts found by him at the scene of the collision, concerning the speed of the automobile driven by appellee's truck driver just prior to the collision, for the reason that said testimony supported appellant's position that the truck of appellee was not visible at the time the automobile in which he was riding started across the highway, and that appellant was therefore not negligent in crossing the highway at said time." Appellant's seventh point had to do with the testimony of the same witness concerning the speed of the automobile driven by appellee's agent just prior to the collision. The record shows that the jury found appellee's driver guilty of negligence in the following particulars: (1) In failing to keep and maintain the truck which he was driving under reasonable control; (2) that the truck driver at the time and on the occasion in question and just before reaching the point of collision was driving his truck at an unreasonable and imprudent rate of speed; (3) that the driver of said pick-up truck as he approached the point of collision failed to keep a proper lookout ahead for other vehicles which might be on the highway, and that all of these acts of misconduct was a proximate cause of the collision and consequent injury of appellant. Had the witness Grandberry been permitted to testify as to the speed at which appellee's truck driver was driving on the occasion of the collision based upon his opinion, it could have done no more than aid the jury in finding, as they did find, that the truck driver was negligent in this respect. Consequently the ruling of the trial court must be held to be harmless.

As respects point 6, advanced by appellant, with respect to the visibility of the pick-up truck just before the collision and at the time Holder and appellant started across the highway was contradictory to the testimony already given by Jenkins, appellant's witness, who was present and saw the accident happen. As set out above, Jenkins said that he saw the pick-up truck as the appellant and Holder started across the highway. The patrolman Grandberry was not even present at the time the collision occurred. He did not see the pick-up truck approaching nor did he make a test under similar circumstances and conditions to verify his opinion as to whether appellant and the driver Holder could see the approaching pick-up truck. The lights of the cars were burning when this collision happened and it is common knowledge that a person meeting another car with lights burning can detect the oncoming car by the reflection of its headlights even though it is in a depression over a hill. While this testimony might be admissible as a circumstance in appellant's favor, we do not think it is of such nature as should cause a reversal of this case. Texas Rules of Civil Procedure, rule 434. We point out here that the jury found Holder, the driver, failed to keep a proper lookout immediately before entering to cross the highway; that he entered upon and attempted to cross the highway at the time and place without even ascertaining whether any vehicles were approaching said point within such distance to make it probably hazardous to proceed to cross; that he entered and attempted to cross the highway from a private road or driveway without yielding the right of way to all approaching vehicles and that he failed to yield the highway to the truck approaching him to his right. The jury found that A. E. Douty, appellant, failed to keep a proper lookout for his own safety, that he failed to warn Glynn Holder of the approach of vehicles on the highway, and that he failed to protest to Glynn Holder of his entering upon and at-

tempting to cross the highway without first determining that he could do so with safety.

We have concluded from the record as a whole that the court was correct in instructing the jury with respect to whether Holder and appellant were joint adventurers. The findings that appellant was guilty of negligence in failing to keep a proper lookout and to warn Holder, the driver, of the approaching pick-up truck on the highway from the north finds support in the evidence.

The judgment of the trial court is affirmed.