**CONSOLIDATED FURNITURE COMPANY,**
Inc., et al., Appellants,

v.

Marion Lee KELLY, Appellee.

No. 13933.

Court of Civil Appeals of Texas.

Houston.

June 6, 1963.

Rehearing Denied June 27, 1963.

The Kempers, Houston, John D. Richardson, Houston, of counsel, for appellant.

Richard H. Powell, Paul A. Tucker, Houston, for appellee.

COLEMAN, Justice.

This is a suit for damages for personal injuries growing out of a collision between an automobile driven by appellee and a truck owned by appellant. The case was tried before a jury which found appellant guilty of acts of negligence and gross negligence and found appellee guilty of acts of contributory negligence. The jury found in favor of appellee (plaintiff in the trial court) on certain issues establishing the "discovered peril" theory of recovery. The trial court entered judgment in favor of the plaintiff for his actual damage as found by the jury.

The principal question to be determined is whether or not the evidence supports the affirmative answers returned by the jury to Special Issues Nos. 3, 4, and 5, reading:

Special Issue No. 3: "Do you find from a preponderance of the evidence that Curtis Carter Solomon, after he had discovered, if he did discover, the Plaintiff's, Marion Lee Kelly's perilious position, if you have so found, realized that such Plaintiff would not in all reasonable probability be able to extricate himself from such perilious position in time to avoid injury? * * *

"If you have answered Special Issue No. 3 'We do', and only in that event, then answer:"

Special Issue No. 4: "Do you find from a preponderance of the evidence that the said Curtis Carver Solomon, made such discovery and had such realization, if you have so found within such time and distance as that by the exercise of ordinary care in the use of all means at his command consistent with the safety of himself, and his vehicle, he could have avoided the collision in question? * * *

"If you have answered Special Issue No. 4 'We do', and only in that event, then answer:"

Special Issue No. 5: "Do you find from a preponderance of the evidence that after making such discovery and having such realization, if you have so found, the said Curtis Carver Solomon, failed to use ordinary care in the use of all means at his command consistent with the safety of himself, and his vehicle?"

Appellee Kelly was driving a 1949 Ford about 40 or 45 miles per hour on a concrete highway. As he was coming around a curve two, three or four blocks from the point of collision, he saw the lights of appellant's vehicle. He testified that he "called for dimmers twice" with no response. When he was "coming pretty close," he took his foot off the gas, and by that time he could see the bulk or outline of appellant's van across the road, at which time he was 35 or 45 feet away from the truck. He immediately applied his brakes, sounded his horn and skidded into the truck. He testified that he was blinded "to a certain extent" by the lights

of the truck until he was about 40 or 45 feet from it.

The defendant Solomon was driving appellant's truck-tractor hauling a loaded furniture van. Just prior to the accident he stopped the vehicle in front of his father's house and had begun backing slowly into his father's driveway. When he first saw the Kelly vehicle, it was "in that curve," which was three or four blocks away. At that time the van was across the highway and the tractor was in the proper lane with its lights shining in the direction from which appellee was approaching. Solomon testified:

"Q When you first saw his lights in the curve, did you attempt to bring your truck across the other portion of the highway and straighten it up?

"A No, sir, I didn't.

"Q Did you back up any faster?

"A No, sir, not as I can remember.

"Q Just stayed at the same speed?

"A Yes, sir.

"Q Did you reach up and blow that horn with your left hand, which was to your left?

"A I can't recall, I don't remember.

"Q Did you blink your lights?

"A Yes, sir, I blinked my lights.

"Q You blinked your lights on the truck?

"A - Yes, sir, I blinked my lights on the truck and I had a flashlight in one hand and I waved it to him.

\*    \*    \*    \*    \*    \*

"Q Now, so that we don't misunderstand each other, your blinker lights were not on—

"A Were not on.

"Q —when you were backing up that truck?

"A That's right, not on.

"Q And you didn't flash your dimmers?

"A Yes, sir, I flashed my dimmers.

"Q Did you keep flashing them as he came down or do you remember telling me that you didn't flash them at all?

"A I couldn't recall that, sir.

"Q Is it possible?

"A I was waving my flashlight. I continued hitting my dimmers because my lights was in his face."

He also testified:

"Q Well, is that what happened? Did you just see him down the road and then follow him right into the truck, follow his headlights?

"A As I caught the reflection of the light and he come around the curve, well, I looked up then.

"Q And you saw him coming?

"A I looked up.

"Q And he was about three or four blocks away, was he not? I mean, that is what you said the curve was?

"A The curve was probably three or four blocks.

"Q All right. And as he got up closer to you and didn't stop you realized that there was going to be an accident, did you not?

\*    \*    \*    \*    \*    \*

"A No, sir, I didn't. I had my flashlight and did everything I could do to stop him.

\*    \*    \*    \*    \*    \*

"Q You realized at that time that if he didn't stop that he was going to

hit you, did you not, if he didn't see you?

"A If the guy didn't see me he was going to hit me.

"Q Did you realize—

"A Well, naturally, he hit me.

"Q And you said on deposition that since you were across the highway, well, naturally he'd hit you?

"A Yes.

"Q And you realized that, didn't you?

"A Yes, sir."

In response to questions by his lawyer, Solomon testified:

"Q What car was that?

"A That was Mr. Kelly's car.

"Q All right. Approximately how far away was he when you first saw him?

"A Oh, probably—I'd say, two blocks or three. I couldn't—I didn't measure the deal on it.

"Q What did you do when you saw him?

"A I continued backing up and I hit my blinkers a couple of times, I was waving my flashlight and trying to attract his attention."

He also testified that when he started backing up he cut his wheels and threw the trailer back into the driveway, which caused his lights to shine to his left, and as he continued to back and turn his wheels, the lights would shift to the right and that "they were not laying down the highway to blind no one."

The officer investigating the collision testified that the accident occurred at 8:40 p. m. The road was approximately 20 feet wide at the point of the collision, which was not at an intersection, but at a private driveway. He testified that when he arrived the position of the tractor indicated that its lights would have been in such a position at the time of the collision as to interfere with the vision of appellant Solomon. He testified that under the existing conditions a car going 40 miles per hour could have been stopped in 75 feet, including reaction time.

The collision happened in a rural area where there were few houses. The road was dry. At the time of the collision the tractor was on its proper side of the road and the van extended across appellee's side of the road and the shoulder on that side. The van was 38 feet long. No clearance lights or reflectors were located on that part of the side of the van occupying appellee's side of the road.

The jury, in response to the issues submitted to it, found that Solomon was not a reckless and incompetent driver; that his failure to turn left and drive his vehicle forward into the driveway was not negligence; that his failure to post a lookout to warn approaching vehicles was not negligence; that his failure to signal by "blinker turning lights" his intention to turn left was negligence and a proximate cause of the collision, but was not gross negligence; that his failure to post flares was negligence and a proximate cause of the collision and constituted gross negligence; that his blocking of the oncoming lane of traffic was not negligence; that his failure to speed up the backing of his vehicle was not negligence; that his failure to pull his vehicle forward to unblock the oncoming lane of traffic was not negligence; that his failure to sound his horn was not negligence; that he did not block traffic longer than was prudent under the circumstances; that backing the vehicle across the highway under the circumstances was not negligence; that he did not fail to maintain a proper lookout; that he negligently failed to dim his lights, which was a proximate cause of the collision; that his failure to yield the right of way was a proximate cause of the collision, but was not gross negligence; that his failure to operate his vehicle en-

tirely upon its own right-hand side of the highway was a proximate cause of the collision, but was not gross negligence; that the stopping of the vehicle upon the roadway by Solomon under the circumstances was not a proximate cause of the collision; that immediately before the collision in question Marion Lee Kelly was not acting under an emergency not proximately caused by any act or omission of his own; that Kelly's vision was blinded by the glare of headlights just prior to the collision; that after becoming blinded he failed to slow his car, which constituted negligence and a proximate cause of the collision; that he did not fail to apply his brakes immediately before the accident; that Kelly failed to keep a proper lookout which was a proximate cause of the collision; and that the collision was not the result of an unavoidable accident.

■ Appellant contends that there is no evidence that Solomon had any reason to believe that Kelly would fail to see the van and proceed on the same course without slowing down, that is, appellant contends that there is no evidence that Solomon actually realized appellee's peril. Appellant further contends that the record is devoid of any evidence as to when Solomon discovered and realized appellee's peril. In support of its position appellant cites Heavy Haulers, Inc. v. Precise, Tex.Civ. App., 348 S.W.2d 653, ref., n. r. e.; Safeway Stores, Inc. v. White, Tex.Sup., 348 S.W.2d 162; Texas & Pacific Railway Company v. Meeks, Tex.Civ.App., 338 S.W. 2d 169, ref., n. r. e.; Welch v. Ada Oil Company, Tex.Civ.App., 302 S.W.2d 175, ref., n. r. e.

We think it unnecessary to discuss each of these cases, since this case is governed by the rules set forth in Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561, and the cases discussed therein. The evidence clearly warranted the jury in finding that Solomon realized that Kelly would fail to see the van and probably would proceed down the road until he collided with the van. Solomon knew that

Kelly was unaware that the van was blocking the road when Kelly came out of the curve. He testified that when he first saw Kelly's car, "I hit my blinkers a couple of times. I was waving my flashlight, trying to attract his attention." Solomon knew that his headlights interfered with Kelly's vision and that his van had no lights or reflectors to shine in Kelly's lane of travel. He knew that he was not at a street intersection and that, since his tractor was in its proper lane of travel, an approaching driver would not expect another vehicle, or part of the same vehicle, to occupy the other lane of travel at substantially the same area of the road. Solomon saw appellee's car for a distance of three or four blocks and knew that the driver was deflecting his lights as a signal that he wanted the tractor's lights deflected. Solomon was an experienced truck driver and his action in continuing to wave the flashlight indicated that he knew Kelly did not see the van and was unaware of the danger he was facing. The jury could reasonably conclude that Solomon realized Kelly's peril when he first saw him approaching, and when he failed to respond to the waving flashlight.

In Ford v. Panhandle & Santa Fe Ry. Co., supra, the court quoted with approval from Hines v. Arrant, Tex.Civ.App., 225 S.W. 767, this passage:

" 'It was his duty, if he discovered the appellee approaching the crossing and could reasonably infer that he would likely undertake to cross the track, to use the facilities at hand to prevent a collision, either by stopping or by lessening the speed of his train, or by giving some warning of the train's approach. *He had no right to wait until he was absolutely certain that the traveler was going into a place of danger before taking the proper steps to avoid injuring him.*' "

The court also quoted this passage from Galveston, H. & S. A. Ry. Co. v. Wagner, Tex.Com.App., 298 S.W. 552: " *'In order for a person to be in peril, it is not necessary*

*that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him.' "* The court in the Ford case then said: "If no vehicle were in a position of peril until it reached a point where it was impossible to stop it short of collision, the time for acting would rarely be sufficient to impose a duty to act."

Solomon's testimony and actions demonstrate that he realized that unless he did something to avert it a collision would probably occur. He elected to wave his flashlight. He testified that he also "blinked his lights." The jury well may have rejected his testimony in this particular, since it was controverted. The jury also found that Solomon was negligent in failing to dim his lights. Appellant could have both blinked his lights and dimmed his lights in a matter of seconds, and his failure to do so fully supports the jury in answering that Solomon failed to use ordinary care in the use of all means at his command to avoid the collision.

It is not necessary to determine the exact time when Solomon realized that Kelly was in a position of danger and probably would not extricate himself, if from the evidence and reasonable deductions to be drawn therefrom it can be determined that he actually realized those facts at a time and distance when he could have avoided the accident by the use of all the means at his command consistent with his own safety and that of his vehicle. It appears to us that the jury carefully and skillfully sifted the evidence in light of the instructions given them in arriving at their answers to the special issue and that their answers to all of the issues are fully supported by the evidence.

Appellant contends that the failure of the trial court to submit his specially requested issues Nos. 2, 6 through 15, 18 and 19, constituted error which was reversible under the facts of this case. We think there was no error in the failure of the court to submit the requested issues, and that in any event the error was harmless under Rule 434, T.R.C.P.

■■ While we recognize that ordinarily the refusal to submit affirmatively issues raised by the pleading and the evidence is harmful error, the refusal to submit these issues was harmless. All of the requested issues were concerned with the question of appellee's contributory negligence. On the issues submitted the jury returned a verdict of contributory negligence. Answers to the requested issues, therefore, could not have affected the judgment of the court. Cato v. Texas & P. Ry. Co., Tex.Com.App., 39 S.W.2d 843; Campbell v. Johnson, Tex. Com.App., 290 S.W. 526; Magnolia Petroleum Co. v. Long, 126 Tex. 195, 86 S.W.2d 450; St. Louis, S. F. & T. Ry. Co. v. Ussery, Tex.Civ.App., 259 S.W. 275, error ref.; Wortham v. Bull, Tex.Civ.App., 19 S.W.2d 211, error ref.; Havens v. Guetersloh, Tex.Civ.App., 255 S.W.2d 233, ref., n. r. e.; Reeves v. Southwest Flying Service, Tex.Civ.App., 258 S.W.2d 848, ref., n. r. e.; Valdez v. Yellow Cab Co., Tex. Civ.App., 260 S.W.2d 715; Ward v. Houston & North Texas Motor Freight Lines, Inc., Tex.Civ.App., 308 S.W.2d 98; Myers v. Cliff Hyde Flying Service, Inc., Tex. Civ.App., 325 S.W.2d 841.

■ Since the matters inquired about in the requested special issues could not have affected the thinking of the jury on the questions presented by the issues on discovered peril, the answers made by the jury to those issues would have rendered any answers the jury might have returned to the requested issues immaterial, refusal of the requested issues could not have resulted in harm to appellant. Texas & P. Ry. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284, aff'd 280 U.S. 531, 50 S.Ct. 159, 74 L.Ed. 596; Yellow Cab Co. v. Pfeffer, Tex.Civ. App., 233 S.W.2d 964; Reed v. Beheler, Tex.Civ.App., 198 S.W.2d 625; Reddick v. Longacre, Tex.Civ.App., 228 S.W.2d 264, ref., n. r. e.; Crawford v. DeLong, Tex. Civ.App., 324 S.W.2d 25, ref., n. r. e.

■ Appellant by his Points of Error Nos. 17, 18 and 19 complains that the court unduly restricted their right of cross-examination in refusing to permit further examination of plaintiff as to the extent he was blinded by the lights of the tractor. If the court erred in restricting cross-examination on this question, in view of the entire record, the error was not one which would probably have affected the verdict and, therefore, was not a reversible error. The jury found that appellee was blinded by the lights and that his failure to reduce his speed after being blinded was negligence and a proximate cause of the accident. Valdez v. Yellow Cab Co., Tex.Civ.App., 260 S.W.2d 715; Douty v. Delta Drilling Co., Tex.Civ.App., 264 S.W.2d 164, ref., n. r. e.; Johnson v. Woods, Tex.Civ.App., 315 S.W.2d 75, ref., n. r. e.; Rule 434, T.R.C.P.

■ Appellant's Assignments of Error Nos. 20 and 21 complain that the court erred in excluding a photograph which would show the angle of the curve and the relative location of the curve and the scene of the accident. In view of the other evidence and pictures introduced into evidence and the verdict of the jury, we cannot say that the exclusion of this evidence probably caused the rendition of an improper judgment. Rule 434, T.R.C.P. The trial court is afforded considerable discretion in ruling on the admissibility of photographic evidence. The picture covered an area of three miles. The witness who presented the picture did not take it. It was taken four or five years prior to the trial and the witness did not remember checking it for accuracy and testified that there might be changes since it was taken. The scale of the picture was ⅝ of one inch equals 260 feet and the witness testified that the greater the height at which the picture was taken the straighter the angle would appear. The trial judge did not abuse his discretion in excluding the photograph. General Accident Fire and Life Assur. Corp. v. Camp, Tex.Civ.App., 348 S.W.2d 782.

Appellant has also complained that the trial court erred in admitting into evidence a docket sheet of a Justice of Peace Court reflecting that Solomon had entered a plea of guilty to a charge of failing to yield the right of way. The docket sheet was not signed by the judge, who was deceased. Appellant contended that he had not entered a plea of guilty in court.

■ In Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806, the Supreme Court of Texas said:

> "Neither should a reversal ordinarily be ordered where the evidence improperly admitted could have no more than an indirect and insubstantial bearing on issues which, as answered, will independently support the judgment, and the answers to such issues are well supported by other competent and relevant evidence."

The evidence on right of way was fully developed by testimony from appellant and appellee and there was no substantial conflict. This evidence was relevant only to the question of appellant's negligence and would not have influenced the jury in answers to other negligence issues found in favor of appellee. In view of the jury's verdict convicting appellee of contributory negligence, the court's action in admitting the evidence could not have harmed appellant.

Appellee's sole basis for recovery is found in the answers made by the jury to the issues on discovered peril. The docket sheet admitted into evidence, and the photograph excluded from evidence, could have had no more than an indirect and insubstantial bearing on the discovered peril issues.

Appellant has assigned as error the action of the trial court in overruling defendant's motion in limine to preclude argument by appellee's counsel concerning the availability of the medical witness, Dr. Cameron, and the witness, Tom Solomon. Appellant's Bill of Exception, as qualified by the

trial judge, does not reflect error. A Bystander's Bill prepared by appellant is not in proper form and cannot be considered. Appellee has filed a Bystander's Bill in proper form concerning the matter complained of by appellant, which reflects that no error was committed. Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506, ref., n. r. e.; Rule 372 T.R.C.P.

After a careful consideration of the entire record, we are unable to say that the damages as found by the jury, and awarded by the court, are excessive.

The judgment of the trial court is affirmed.