Len ROGERS et al., Appellants,

v.

STIMSON CONTRACTING COMPANY and Stimson Corporation, Appellees.

No. 16224.

Court of Civil Appeals of Texas.

Dallas.

Nov. 15, 1963.

Rehearing Denied Dec. 13, 1963.

**550**

Biggers, Baker, Lloyd & Carver, Ralph · D. Baker and Kenneth C. Stephenson, Dallas, for appellants.

Leachman, Gardere, Akin & Porter and Edward E. Crowell, Jr., Dallas, for appellees.

DIXON, Chief Justice.

Appellant Len Rogers, individually and as Next Friend for his 19-year-old son, Jerry Rogers, sued Stimson Contracting Company, a corporation, and Stimson Corporation for damages arising from personal injuries sustained by Jerry Rogers in a collision between motor vehicles. Appellant's son was driving his car on the afternoon of August 14, 1961, in an easterly direction on Redbird Lane in the City of Dallas, when the car collided head-on with a piece of road construction machinery owned and operated by appellees.

A jury, answering 22 Special Issues, returned a verdict finding appellees' employee negligent in several particulars, each of which was a proximate cause of the collision. But the jury in answering Special Issues Nos. 13 and 14 also found that Jerry Rogers was guilty of contributory negligence in that he failed to keep a proper lookout and that such failure was a proximate cause of the collision. Based on the jury verdict judgment was rendered in favor of appellees that appellant take nothing.

In his first three points on appeal appellant charges jury misconduct in that (1) one of the jurors on voir dire examination failed to reveal that he had studied law, (2) certain representations were made during the jury deliberations to the effect that the jury's answer to Special Issue No. 14 was immaterial (whether Jerry Rogers' failure to keep a proper lookout was a proximate cause of the collision) and (3) members of the jury "traded out" with each other in answering certain special issues.

We have concluded that none of appellant's first three points presents reversible error. As to point (1), none of the four jurors who testified at the hearing on the motion for new trial saw or remembered that the challenged juror failed to raise his hand in response to the court's question in regard to the study of law.

As to point (2) the evidence shows that at first some of the jurors wished to answer "No" to Special Issue No. 14. All other issues had already been answered including the answer of $25,000.00 to the damage issue. The evidence indicates that some of the jurors felt and stated that the answer to Special Issue No. 14 would not make any difference. However, the evidence will support a finding that in last analysis each juror reached such conclusion through the exercise of his or her own mental processes. For example, one juror testified as follows: "I didn't change my mind, I just agreed, because we had been there a long, long time with a great deal of discussion going on, and I was convinced that this question would not be important." Another juror testified as follows:

"Question: Well, did these representations have any effect on your answers, changing your answer?

"Answer: What representations?
* * * * *

"Question: Is there anything else that changed your mind, that made you change from your answer from—on this particular issue from 'No' to 'Yes'?

"Answer: Well, the only thing, the only reason I changed my mind was that I didn't think it mattered."

Our Supreme Court has held that a juror cannot be permitted to preserve or destroy his verdict by testifying to the mental processes by which he reached his verdict. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. The Supreme Court has further held that " * * * an express misconstruction of the court's charge, which does not bring to the attention of the jury law or facts outside of the record should not be regarded as misconduct within the meaning of Rule 327 [T.R.C.P.]." Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364. The mere fact that jurors discussed the effect of their answer to a special issue is not alone sufficient to constitute misconduct of the jury. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62; Selmikeit v. El Paso City Lines, Tex.Civ. App., 365 S.W.2d 840.

As to point (3) we must bear in mind that in the very nature of things it is not to be expected that twelve persons at the start of a conference will immediately find themselves in unanimous agreement in regard to each of twenty-two controversial questions. It is contemplated that jurors will engage in discussion and argument; and that if unanimity in answering the questions is ever to be reached concessions must be made and initial opinions and conclusions must in some instances be modified or even abandoned in the light of convincing discussion and argument. Such concessions and modifications of opinions will not ordinarily constitute jury misconduct. Kendall v. Southwestern Public Service Co., Tex.Civ.App., 336 S.W.2d 770.

In the instant case there is evidence that at least one juror stated that if an answer of "No" was to be given to Special Issue No. 14 she would have to reconsider her answer to the damage issue, as she would then be unwilling to allow appellant $25,-000.00 damages. But there is no evidence that any juror persisted in such intention.

The lady who is alleged to have made the statement did not testify.

In this connection we quote from the testimony of one of the jurors:

"Question: What did you all do, if you wanted to answer an issue 'no', and she wanted you to answer another issue another way?

* * * * *

"Answer: Well, we just talked back and forth continually about the different phases of the accident, and generally speaking, we were all in agreement on everything but several of the issues.

"Question: All right. What would you call that then, what you did with Mrs. Teel?

"Answer: Well, it would be very difficult, as I told you, to say that we were trading off, but allowing for this old human element, perhaps, in legal terms, that might be what you would call it. I would hate to have to admit it, because *I didn't feel at the trial, nor do I feel now, that I actually traded off anything. I felt in my mind that my decision was mine alone, after being convinced by the other jurors,* * *"* (emphasis ours)

We also quote from the jury foreman's testimony:

"Question: Now, of course, there were differences among you, I gather, as you would find on various phases of the special issues; there would be some for, some against, isn't that true?

"Answer: There was only about two or three.

* * * * *

"Question: But finally you all did get together, the jury under your direction, and they would vote unanimously, wouldn't they, before you wrote the issue down—the answer down?

"Answer: Yes, sir, before I wrote it down, it was unanimous.

"Question: Yes, sir. You wouldn't write it down until there was a unanimous vote?

"Answer: Correct."

■■ Under Rules 327 and 434 Texas Rules of Civil Procedure the burden is upon complainant not only to prove an act of jury misconduct but also to show probable harm resulting from such misconduct. Taylor v. Dallas Transit Co., Tex.Civ.App., 351 S.W.2d 554. Since the trial court overruled appellant's motion for new trial we must presume that the court found that appellant had failed to meet this burden. The record shows that following the return of the verdict the court polled the jury and was informed that each juror answered each particular issue as shown on the jury's verdict. After a study of the whole record we are convinced that the evidence will support the presumed finding of the trial court. Appellant's first three points are overruled.

■ In his fourth point appellant asserts that the court erred in refusing to consider an additional ground of jury misconduct which appellant sought to raise for the first time in a pleading denominated "Trial Amendment and/or Supplement to Plaintiff's Amended Motion for New Trial". This instrument was filed after the hearing on the amended motion for new trial. It alleges that the answer to the damage issue was a quotient verdict.

The fourth point is without merit for three reasons: (1) Rule 329-b provides that no more than one amended motion for new trial may be filed. Hartford Accident & Indemnity Co. v. Gladney, Tex.Civ.App., 335 S.W.2d 792. (2) Since the jury found that Jerry Rogers was guilty of contributory negligence which was a proximate cause of the collision, the answer to the damage issue is immaterial. (3) There is no showing that the jurors agreed to be bound by a quotient verdict. The fourth point is overruled.

Appellant's fifth and sixth points are that the court erred (5) in overruling his motion for judgment *non obstante veredicto* and (6) his motion to disregard the jury's findings that Jerry Rogers failed to keep a proper lookout and that such failure was a proximate cause of the collision. Appellant argues that other issues submitting the specific elements of proper lookout were all answered in favor of appellant as to negligence, hence the court should disregard the two findings in regard to proper lookout. In support of this contention appellant cites us to E. C. Cunningham et ux. v. Suggs, Tex.Civ.App., 340 S.W.2d 369.

We do not agree with appellant. It is true that the jury found that Jerry Rogers failed to observe a barricade to the west of the area under construction, failed to apply his brakes properly and failed to turn his car to his right, but that such acts either were not negligence or were not proximate causes of the collision. And the jury found that Jerry Rogers was not driving his car too fast. However, under the circumstances of this case the above issues did not encompass all the specific elements of proper lookout on the part of Jerry Rogers.

The collision took place in the afternoon on a stretch of the road which was under construction. The weather was cloudy. There had been a drizzle all morning. One-half of the road was blocked. The other half was used by both lines of traffic. There is evidence that a machine called a front-end loader had travelled West toward Jerry Rogers about 50 feet before the collision. There is also evidence that when the operator saw Jerry approaching he stopped the front-end loader and attempted to get the machine in reverse in an effort to avoid the collision. There is testimony that the loader had been traveling straight West toward Jerry and had not been off the road. Another workman testified that he was some distance in front of the loader and that he began waving his hands and

later a shovel at Jerry in an attempt to flag him down when Jerry was 175 or 200 feet away. Jerry testified that he could have stopped his car within 50 or 60 feet. Jerry also testified as follows:

"Question: You never did see the front-end loader at all until you were about a car length and a half from it?

"Answer: Well, about a car length.

I just saw a yellow blob. I don't know how close I was."

In order to sustain his fifth and sixth points it was necessary for appellant to show that there was no evidence to support the jury's finding that Jerry Rogers failed to keep a proper lookout, which failure was a proximate cause of the collision. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Goff v. Lubbock Building Products, Tex.Civ.App., 267 S.W.2d 201–203; Ayala v. Maume, Tex.Civ.App., 318 S.W.2d 698. In the light of the evidence we must overrule the fifth and sixth points.

In his seventh to twenty-first points inclusive, appellant complains of the court's refusal to submit certain requested special issues which would have inquired about additional alleged acts of negligence on appellee's part. The failure of the court to submit these issues does not constitute reversible error for two reasons: if the issues had been submitted and the jury's answers had been favorable to appellant, said answers would not have entitled appellant to judgment in view of the jury's answers finding contributory negligence on the part of Jerry Rogers. Consolidated Furniture Co. v. Kelly, Tex.Civ.App., 369 S.W.2d 53; (2) the issues were either not drawn in "substantially correct wording",* Rule 279

T.R.C.P., or were covered by other issues submitted by the court. Eckert-Fair Construction Co. v. Flabiano, Tex.Civ.App., 342 S.W.2d 629–633. Appellant's seventh to twenty-first points inclusive are overruled.

In his twenty-second to twenty-fifth points inclusive appellant says that the jury's answers to Special Issues Nos. 13 and 14 are either without support in the evidence, or that the answers are against the weight of the evidence. In our discussion of appellant's fifth and sixth points we referred to evidence regarding proper lookout. The evidence was sufficient to support the jury's answers to Special Issues Nos. 13 and 14. Appellant's twenty-second to twenty-fifth points inclusive are overruled.

The judgment of the trial court is affirmed.

Affirmed.

---

* For example, requested Issue No. 1 would have asked the jury whether appellees' operator was driving the front-end loader on the "wrong" side of the street. Art. 6701d, Sec. 52, Vernon's Ann.Civ.St. provides that the driver of a vehicle shall drive on the "right half" of the roadway. However, the statute expressly makes an exception when the right half is closed to traffic while under construction or repair, as was the case here. To ask the jury whether the front-end loader was being driven on the "wrong" side of the roadway would be to ask the jury to answer a question of law.