Lazell WILLIAMS et ux., Appellants,

v.

KIDWELL GENERAL MOTORS CORP.
et al., Appellees.

No. 17379.

Court of Civil Appeals of Texas,
Fort Worth.

March 29, 1974.

Rehearing Denied April 26, 1974.

Schenk, Wesbrooks, Smith & Douglass, and S. Price Smith, Jr., and Cletus C. Schenk, Wichita Falls, for appellants.

Fillmore, Parish, Martin, Kramer & Fillmore, and H. Dustin Fillmore, Wichita Falls, for appellees.

OPINION

LANGDON, Justice.

This is a suit under the Wrongful Death Act of the State of Texas, brought by the parents of the decedent, Rickey Joe Williams, a minor, who was killed while riding as a passenger on a motorcycle driven by Harold Charles Volking, which was struck by a pickup truck driven by defendant, Harold Henry, hereinafter called Henry. The case was tried to a jury. It found in answer to Special Issues Nos. 7, 8 and 9, respectively, that Henry failed to keep a proper lookout while acting within the scope and course of his employment, that such action was negligent and was the proximate cause of the death of Rickey

Joe Williams. The trial court disregarded the jury's answers on the lookout issues, Nos. 7, 8 and 9, and granted the defendant a judgment notwithstanding the verdict. The jury further found that the appellants had suffered damages in the amount of $4,300.00 and the defendants stipulated to the burial expenses of $2,041.33, making a total recovery of $6,341.33.

Appellants perfected this appeal from the action of the trial court based upon nine (9) points of error.

We reverse and render.

For the sake of brevity our discussion will be limited to appellants' first two points because our holding with reference to them will determine the outcome of the appeal. We have, however, considered each of appellants' points three through nine and sustain each of them.

By their first two points the appellants contend that the trial court erred in granting the defendants (appellees) a judgment non obstante veredicto because the affirmative findings of the jury to Special Issues Nos. 7, 8 and 9 are supported by evidence of probative value and therefore judgment should have been granted them based upon the jury's verdict.

This appeal is narrowed to the sole question of whether or not there was any evidence to support the jury's findings. Rogers v. Stimson Contracting Company, 373 S.W.2d 548, 533 (Dallas, Tex.Civ.App. 1963, no writ hist.). In consideration of this question we have reviewed the entire record in the case. In our opinion the following summary of evidence in this cause will reflect, not only the facts presented to the jury, but also the inferences and deductions to be drawn therefrom by the jury.

Rickey Joe Williams was riding on a motorcycle as a passenger behind Harold Charles Volking, traveling in a northerly direction on U.S. 287, an expressway. The motorcycle with its two passengers left the expressway by way of the exit ramp, intending to proceed to the Wayfarer Motel. Henry, driving a pickup truck, was also traveling in a northerly direction in the left-hand curb lane on the service road that parallels the expressway. The accident, the basis of this lawsuit, occurred when the motorcycle failed to yield the right-of-way and pulled onto the service road from the exit ramp into the path of the approaching pickup driven by Henry.

Only two eye-witnesses to the accident testified, Haskell I. Rhone, Jr., and the defendant, Henry. Charles Beaver, the investigating officer, was also a witness.

Rhone pulled in behind the motorcycle in question while both were traveling in the same direction on the expressway. He followed the motorcycle at a distance of approximately 45 to 50 feet as both vehicles left the expressway and entered the same exit ramp.

Rhone testified that as the motorcycle reached the service road on the exit ramp the motorcycle stopped or almost stopped and that when the pickup truck had approached to within 20 to 30 feet at an approximate speed of 50 to 55 miles per hour, the motorcycle pulled out from behind a yield the right-of-way sign from the exit ramp and into the path of the Henry vehicle. Rhone observed the defendant's pickup swerve to the right in an effort to avoid the motorcycle.

Henry, driver of the pickup truck, estimated his speed to be approximately 30 miles per hour.

The service road upon which Henry was traveling is a two-lane, one-way road and he was traveling in the left-hand lane as he approached the intersection of the exit ramp and the service road. To further clarify the positions of the vehicles, it is again emphasized that the freeway (U.S. 287) on which the motorcycle was traveling, with Rhone in the car behind, was parallel to the service road on which Henry was driving his pickup. The three vehicles were headed in the same direction.

When the motorcycle and Rhone's car left the freeway via the exit ramp, they were slanting or angling toward the service road on which Henry was proceeding.

Charles Beaver, the investigating officer, made a diagram of the intersection showing the location of the Wayfarer Motel and the point where the exit ramp of U.S. 287 (the expressway) enters the service road. The diagram shows that the entrance to the Motel opens directly across the service road from the exit ramp. Beaver testified that the skid marks left by the defendant's truck started in the left lane of traffic of the service road and progressed across the right lane of traffic, where the pickup truck struck and went over the right curb of the service road.

The location of the entrance to the Wayfarer in relation to the exit ramp is important. It is obvious from Henry's testimony that he was not aware of where the entrance road to the Wayfarer Motel was and that he assumed from the moment he first saw the boys on the motorcycle to the point of impact that the boys were turning left at the intersection and not proceeding across the service road into the entrance to the Wayfarer Motel and he took action accordingly. According to his testimony Henry was trying to anticipate what action the boys were taking, rather than to observe what, in fact, they did do. Had Henry observed that the boys on the motorcycle were, in fact, going across the service road to the Wayfarer Motel rather than turning left, then his actions would in all probability have been different. Henry in effect yielded the inside lane to the boys on the motorcycle rather than to apply his brakes or reduce his speed so that they would have the entire left-hand lane of the highway in which to make their turn. Henry, under the evidence, assumed that the boys on the motorcycle would not stop at the yield sign. When he realized that they were not going to stop at the yield sign, he took his eyes off of them and looked to the right. He pulled his vehicle to the right and when he looked back, the boys were directly in front of him and he had, in fact, pulled directly in line with the direction they were going. It is undisputed that if Henry had stayed in the left-hand lane, the collision would not have occurred. Under the evidence in this case the jury could, with good reason, have believed that Henry would have guessed correctly had he maintained a proper lookout. Because he failed in this regard his guess or assumption was an incorrect one.

Ordinarily, proper lookout is a question for the jury. It is within the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony. It may resolve conflicts and inconsistencies in the testimony of one witness as well as that of different witnesses. See Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957); and Austin Fire Ins. Co. v. Adams-Childers Co., 246 S.W. 365 (Tex.Com.App., 1923).

The question of whether or not the actions of a driver after making an incorrect assumption as to the actions of another driver constitute improper lookout was considered by this Court in Henderson v. Smith, 354 S.W.2d 429 (Fort Worth, Tex. Civ.App., 1962, no writ hist.). In Henderson the court said that, "In view of plaintiff's uncertainty as to whether or not defendant's car was stopped when she first observed it, the jury was justified in finding that she was negligent in proceeding without again observing the defendant's car. It is a reasonable inference that had she looked again, or continued to look after first seeing defendant's car, she would have seen defendant's approach onto the Highway and could have reduced her speed or otherwise have avoided the accident.

"The fact that plaintiff had the right of way did not excuse her from exercising ordinary care for her own safety. Although not required to anticipate negligent or unlawful conduct on the part of others, she was not entitled to close her eyes to that

which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273."

In Henderson the assumption was that defendant was stopped at the stop sign and would remain stopped and here the assumption was that the boys on the motorcycle were turning left when, in fact, they were not.

In Tips v. Gonzalez, 362 S.W.2d 422, the Court of Texas Civil Appeals, San Antonio (1962, no writ hist.) was faced with the issue of whether or not the driver of an automobile proceeding into the intersection on a green light could be guilty of improper lookout. In that case the court said, "In viewing the evidence we must consider the testimony in a light most favorable to the finding of the jury. Powell v. Sanders, Tex.Civ.App., 324 S.W.2d 587, no writ history. When the evidence is viewed in this light the jury might well have concluded that Tips was not keeping a proper lookout, by keeping his eyes upon the car that had come to a stop rather than watching the car that was approaching him from the north, which was traveling between twenty and twenty-five miles per hour at the time he saw it some fifty yards away.

"It is not only required that the driver of a car must look both ways before entering an intersection, even on a green light, but after entering the intersection he must keep up such a lookout for his own safety as a reasonably prudent man would do under the same or similar circumstances."

■ The cases above cited stand for the proposition that when a driver begins anticipating what another driver will do without observing what in fact he is doing, the fact finder is entitled to conclude that he is not maintaining a proper lookout. The duty to maintain a proper lookout does not cease simply because the vehicle owes the duty to yield the right-of-way or stop at a stop sign or a red light. Kiebach v. Luker, 476 S.W.2d 46, 50 (Houston, Tex.Civ.App.,

1st Dist., 1972, no writ hist.); McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (1957); Reddick v. Lindquist, 484 S.W.2d 441 (Fort Worth, Tex.Civ.App., 1972, no writ hist.); Walsh v. Hershey, 472 S.W.2d 954 (Fort Worth, Tex.Civ.App., 1971, ref., n. r. e.); and Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

Henry was unable to recall how far he was from the intersection when he took his eyes off the motorcycle. Mr. Rhone's testimony made it plain that a great many things occurred in that span of time. Henry did not see the motorcycle come to a stop, or near stop. He did not see it start up again nor did Henry see the motorcycle carrying the boys pull across the left-hand lane. During this span of time Henry was looking to the right, anticipating that the boys on the motorcycle were going to turn left and proceed in the left-hand lane and because of a wrong guess Henry pulled his truck to the right.

The case of McWilliams v. Muse, supra, involved facts very similar to the facts here involved and the same questions as to whether or not there was any evidence of probative value to support the jury's verdict. The court in McWilliams said that, "It is not necessary for us to decide whether petitioner or respondent initially had the right-of-way under the provisions of these statutes, because a statutory right-of-way rule is not absolute but relative, and is subject to the qualification that a person entitled to claim such right will exercise it with proper regard for the safety of himself and others. See Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910 (wr. ref.). If the driver who is under the statutory duty to yield the right-of-way fails to do so, the exercise of ordinary care may require the operator of the other vehicle to yield."

■ Based upon our review of the record in this cause and the application of the authorities above cited to the facts here involved we find and hold that there was ample evidence of probative value to

support the submission of the lookout issues, Nos. 7, 8 and 9, and the findings of the jury with reference to each of such issues.

In our opinion the holdings in the McWilliams, Ricketts, Henderson, Riddick and Walsh cases, supra, in particular, and the authorities cited therein when applied to the record in this cause, compel a reversal and rendition of this cause. We accordingly sustain appellants' points of error Nos. one and two, reverse the judgment of the trial court, and here render judgment for the appellants in the sum of $6,341.33, plus interest at 6% from May 19, 1972, the date of the trial court's judgment.

Reversed and rendered.